**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| ASSANE DIOUF,<br><br>*Petitioner*,<br><br>v.<br><br>MATTHEW PUTRA, Immigration and Customs Enforcement, Acting Director of the Detroit Field Office, Enforcement and Removal Operations,<br><br>*Respondent*. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No. 1:26-cv-788<br><br>Judge Jeffery P. Hopkins |

# ORDER

Petitioner Assane Diouf, a native of Mauritania, is a United States Immigration and Customs Enforcement detainee currently detained at the Butler County Jail in Butler County, Ohio. He has been detained there since October 28, 2025—nearly thirteen months. Petitioner has filed a Petition for Writ of Habeas Corpus (Doc. 1) pursuant to 28 U.S.C. § 2241. In his Petition, Petitioner requests immediate release from detention. Respondent filed a Return of Writ (Doc. 8), to which Petitioner filed a Reply (Doc. 9). The matter is ripe for adjudication.

## I. BACKGROUND

Petitioner Assane Diouf is a native of Mauritania. Pet., Doc. 1. Diouf entered the United States on or about June 2, 2003. *Id.* ¶ 15. Following immigration proceedings, Diouf received a final order of removal, and he was placed on an Order of Supervision in February 2018. *Id.* ¶¶ 16–17. Among other conditions, his Order of Supervision required that he "provide ICE with written copies of requests to Embassies or Consulates requesting the issuance of a travel document." *Id.* ¶ 18 (quoting Pet'r. Ex. B). Immigration and Customs

Enforcement ("ICE") confirmed his compliance on June 7, 2023, and May 8, 2024, respectively. *Id.* Diouf maintained his supervision until his Order of Supervision was suddenly revoked at a scheduled check-in with ICE on October 28, 2025. *Id.* ¶ 19. He was detained at that time. *Id.*

Following his detention on October 28, 2025, Diouf filed a habeas petition in the Southern District of Ohio on November 14, 2025. *Id.* ¶ 20. Senior District Judge Susan J. Dlott dismissed the petition without prejudice on April 30, 2026, explaining, in relevant part:

> The Court finds that Diouf met his initial burden to prove that he is not likely to be removed in the foreseeable future. Diouf has been under a removal order since 2013. There is no evidence that Respondent took any steps at effectuate his release for the next twelve years. Respondent took Diouf into custody on October 28, 2025, before they requested the travel documents from Mauritania ordinarily necessary to remove a noncitizen. Six months have now passed since Respondent requested travel documents for Diouf, but Mauritania has yet to provide them. Further, Respondent initially provided inconsistent statements about the type of document Mauritania required to establish citizenship, creating doubt that Mauritania would accept removals. This evidence together was sufficient to satisfy Diouf's initial burden.
>
> Therefore, Respondent was given the opportunity to rebut that showing with evidence. *See Zadvydas*, 533 U.S. at 701. Respondent met its burden, despite not yet receiving travel documents or a *laissez-passer* for Diouf. Respondent has confirmed that Mauritania may accept I-269s or will issue *laissez-passers* for its citizens. Mauritania accepted removals of its citizens from the United States on the March 29, 2026 flight. There is no reason to doubt that Mauritania would have accepted the removal of Diouf if he had not been subject to this Court's November 18, 2025 Order not to transfer him. Accordingly, although Diouf's removal has been delayed, Respondent has demonstrated that it is likely Diouf will be removed to Mauritania in the reasonably foreseeable future.

*Diouf v. Raycraft*, No. 1:25-cv-834, 2026 WL 1179423, at *4 (S.D. Ohio Apr. 30, 2026). Judge Dlott went on to clarify that "[d]istrict courts have held that '[m]ere delay by the foreign government in issuing travel documents, despite reasonable efforts by United States authorities to secure them, does not satisfy a detainee's burden under *Zadvydas* to provide good reason to believe that there is no significant likelihood of removal in the reasonably

foreseeable future.'" *Id.* (quoting *Estenor v. Holder*, No. 1:11-cv-743, 2011 WL 5572596, at *3 (W.D. Mich. Oct. 24, 2011), *report and recommendation adopted*, No. 1:11-cv-743, 2011 WL 5589279 (W.D. Mich. Nov. 16, 2011)). As a result, she concluded that, *at that time*, Diouf's continued detention did "not violate due process or 8 U.S.C. § 1231(a)(6) as interpreted in *Zadvydas*." *Id.* After his continued detention, however, Diouf filed the instant Petition (Doc. 1) about four months later.

## II. LAW AND ANALYSIS

It is well settled that: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const., art. I, § 9, cl. 2. The constitutional guarantee of the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). To preserve the right of the people to obtain relief under this Clause, Congress enacted 28 U.S.C. § 2241. Section 2241 confers on federal district courts the power to issue writs of habeas corpus to persons held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This authority also includes challenges made by noncitizens in immigration-related detention matters. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Because Petitioner challenges his detention, the Petition is properly before the Court for consideration.

### A. Petitioner's detention violates due process.

Diouf argues that his prolonged detention is not legally justifiable because it is unlikely that he will be removed to Mauritania in the reasonably foreseeable future. Pet., Doc. 1, ¶ 22. He asserts that "despite the Government's prior prediction that removal was imminent, additional months have passed without travel documentation or a removals schedule,

undermining the prior basis for concluding that removal was reasonably foreseeable." *Id.* In the Return of Writ filed on September 7, 2026, Respondent contends, however, that Diouf's removal remains reasonably foreseeable. Doc. 8, PageID 56–57. In support of their position, Respondent relies on a series of events that occurred between May and June:

> [O]n May 4, 2026, ICE was advised by HQ RIO that a travel document for Diouf was pending examination by Mauritania's Ministry of Foreign Affairs. On June 1, 2026, Diouf was served with the decision to continue detention. Subsequently, on June 11, 2026, HQ RIO advised ICE that an in-person interview was being scheduled for Diouf at the Mauritanian Embassy in Washington, D.C. in relation to the issuance of a travel document, and this in-person interview occurred on June 24, 2026.

*Id.*

INA § 241 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). To that end, an alien who is not removed within the 90-day removal period shall be subject to supervision. *Id.* § 1231(a)(3). A separate provision, however, authorizes continued detention of certain inadmissible aliens beyond that period:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

*Id.* § 1231(a)(6).

That said, in *Zadvydas*, the Supreme Court held that reading § 1231(a)(6) to authorize indefinite detention would "raise a serious constitutional problem" under the Fifth Amendment's Due Process Clause. *Zadvydas*, 533 U.S. at 690. Thus, the Court "construe[d] the statute to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review." *Id.* at 682. Though it serves as a guidepost rather than a

bright-line rule, *Zadvydas* directs that six months following the initial 90-day detention period is presumptively reasonable:

> Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id*. at 701. In this case, Diouf has been detained for nearly thirteen months. Pet., Doc. 1, ¶ 19.

Here, the Court's reading of *Zadvydas* counsels in favor of Diouf's immediate release. This Court adopts Judge Dlott's previous determination that Diouf has provided "good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future" sufficient to shift the burden to Respondent to rebut that showing. *Diouf*, 2026 WL 1179423, at *4 (quoting *Zadvydas*, 533 U.S. at 701). Based on Respondent's representations, Judge Dlott found in April—nearly seven months ago—that Respondent adequately rebutted Diouf's showing. *Id.* At that time, Respondent had "confirmed that Mauritania may accept I-269s or will issue *laissez-passers* for its citizens." *Id.* However, now seven months later, Diouf remains detained and there is no information before the Court to suggest that Mauritania has issued a travel document for Diouf or that he has been scheduled for removal to Mauritania. The Court therefore finds based on the information available to it that Diouf's removal is no longer reasonably foreseeable in light of the fact that it has now been nearly thirteen months since Diouf was detained, seven months since his first petition

was denied, and five months since he was interviewed at the Mauritanian Embassy from which a travel document was to issue.

Diouf's detention for over a year now far "exceeds a period reasonably necessary to secure removal." *Zadvydas*, 533 U.S. at 699. Accordingly, his continued detention without meaningful progress toward effectuating his removal violates 8 U.S.C. § 1231(a)(6) as constrained by the Due Process Clause of the Fifth Amendment. *Id.* at 699–700.

## III. CONCLUSION

For these reasons, it is **ORDERED** that Diouf's Habeas Petition (Doc. 1) be **GRANTED**. It is further **ORDERED** that Respondent immediately **RELEASE** Petitioner from custody, subject to a reasonable order of supervision, and to certify compliance with this Order by filing a notice on the docket within one day of the date of this Order.

**IT IS SO ORDERED.**

November 24, 2026

Jeffery P. Hopkins
United States District Judge